United States Court of Appeals,

Fifth Circuit.

No. 94-20128.

In the Matter of Patrick Gerald WAINDEL and Susan Louise Waindel, Debtors.

UNITED STATES of America, Appellant,

v.

Patrick Gerald WAINDEL and Susan Louise Waindel, Appellees.

Oct. 9, 1995.

Appeals from the United States District Court for the Southern District of Texas.

Before JONES, DUHÉ and STEWART, Circuit Judges.

EDITH H. JONES, Circuit Judge:

The Internal Revenue Service (IRS) appeals the district court's and bankruptcy court's disallowance of a tardily filed claim for unpaid taxes, penalties and interest in the debtors' Chapter 13 case. The lower courts held that tardily filed priority claims are disallowed from recovery under Bankruptcy Rule 3002 and that IRS's claim was not a mere amendment of another claim it filed in the case. Because IRS apparently finds it difficult to comply with the bankruptcy rules' 90-day "bar date" for filing proofs of claim, these questions have arisen repeatedly in recent years, and conflicting authorities have piled up. *See, e.g., United States v. Chavis (In re Chavis),* 47 F.3d 818 (6th Cir.1995); *United States v. Towers (In re Pacific Atlantic Trading Co.),* 33 F.3d 1064 (9th Cir.1994); *United States v. Vecchio (In re Vecchio),* 20 F.3d 555 (2nd Cir.1994); *Internal Revenue Service v. Century Boat Co. (In*

1

*re Century Boat Co.),* 986 F.2d 154 (6th Cir.1993). Fortunately, Congress fixed the problem for tax claims in cases filed after October 22, 1994.[1] As for the many pre-amendment cases, however, this court sides with the analysis that holds tardy claims to be tardy, not disallowed, but potentially entitled to no more than lower-priority recovery from the debtor's estate. 11 U.S.C. § 726(a)(3). In this case, our result reverses the judgments of the lower courts insofar as the "allowance" of IRS's late-filed claim is concerned, but we also hold IRS was not entitled to priority claim distribution rights and that its late claim was not a permissible amendment to an earlier, timely claim. The lower court judgments are technically reversed in part and affirmed in part, but IRS recovers nothing on its tardy claim.

I.

BACKGROUND

Patrick and Susan Waindel filed a Chapter 13 petition on August 5, 1991. Before this filing, the IRS notified them that it was disallowing certain deductions they had taken for the tax years 1982 through 1986. The Waindels listed on the Chapter 13 Statement filed with their petition an estimated tax liability for 1990 of $20,000, and estimated and disputed tax liabilities for 1982 and 1983 of $16,850 and $9,500 respectively. No explanation has been offered as to why the debtors did not schedule estimated and disputed tax liabilities for the years 1984 through 1986.

The bankruptcy court issued a notice of the § 341 meeting of

---

[1]*See* 11 U.S.C. § 502(b)(9) (Supp.1995).

creditors specifying that all proofs of claims were to be filed prior to February 4, 1992 in order to be allowed and paid. Shortly after receiving this notice, the IRS filed a timely proof of claim for taxes, penalties, and interest for 1990 in the amount of $20,796.52.[2] On February 6, 1992, two days after the filing deadline, the IRS filed an "amended" proof of claim asserting a total claim of $73,781.79 spanning the years 1982, 1983, 1984, 1985, 1986, and 1990.[3]

Debtors objected to the amended proof of claim arguing that it was actually a new claim that must be disallowed because it was not timely filed pursuant to Bankruptcy Rule 3002(c). Prior to trial, the parties stipulated that deficiencies for all of the tax years in question totalled $71,151.98. At trial, the IRS offered uncontroverted testimony that the amended proof of claim was actually prepared on January 6, 1992—well in advance of the February 4 deadline. Unforeseen personnel changes were blamed for the tardiness of the actual filing.

The bankruptcy court ruled that because the amended proof of claim was not of the same generic origin as the original proof of claim, it did not properly qualify as an amendment, but was actually a new claim. The bankruptcy court further held that the bar date set forth in Rule 3002(c) precluded allowance of any

---

[2]Of the claim for 1990 taxes, $20,059.25 was a priority unsecured claim, and $737.27 was a general unsecured claim.

[3]The claim for 1990 was ultimately reduced to $142.22 in interest after the IRS received and processed the debtors' 1990 tax return and payment.

3

claims filed after that bar date.[4]  The district court affirmed the decision of the bankruptcy court.  The IRS now appeals.

## II.

## DISCUSSION

Before the enactment of the Bankruptcy Code in 1978, section 57n of the 1898 Bankruptcy Act (hereinafter "the Act") barred late-filed claims from sharing in distributions of the debtor's estate.  The Waindels assert that the bar date concept was carried over into the Code.  IRS argues that to the contrary, the Code eschewed the bar date as a complete bar to recovery and opted instead for a system that separates claims into two categories, timely and tardy.  It is of course not enough to posit that Congress *meant* to preserve the certitude of the bar date.  One must rely upon the text of the Code, if it is plain, as the definitive guide to congressional intent.  *See United States v. Ron Pair Enterprises,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

The text of the Code does not support a bar date as a complete bar to recovery.  As other courts have noted, sections 501, 502 and 726 are the Code provisions that respectively concern the filing of claims, their allowance, and the priority of distribution to claimants.  Although none of these provisions sets a bar date or depends for its efficacy on a total bar, the imposition of deadlines for filing claims is clearly contemplated.  Section

---

[4]The court also noted that Bankruptcy Rules 3002(c) and 9006(b)(3) provided for an extension of the bar date upon proper motion.  However, no such motion was filed by the IRS.

4

501(c) authorizes a debtor or the trustee to file a proof of claim for a creditor who has not timely filed in his own behalf. Section 726 permits late-filed claims to share in the debtor's estate in two circumstances, differentiating according to whether the claimant had sufficient notice of the bankruptcy to permit a timely filing. 11 U.S.C. § 726(a)(2)(C), (a)(3). While § 502(b) lists various exceptions to the "allowance" of claims against the debtor, however, untimeliness is not among them. The Code therefore renders timely filing of claims significant for purposes other than "allowance."

The concept of a bar date as preventing recovery from the debtor's estate arises not from the Code but from Bankruptcy Rule 3002(a), which requires timely filing of a claim for it to be "allowed." Keying "allowance" to timeliness is a vestige of practice under the 1898 Bankruptcy Act; the original authors of the Bankruptcy Rules more or less transcribed the absolute bar date rule based on the Act into Rule 3002 accompanying the Code. *See* Rule of Practice and Procedure in Bankruptcy 3002, Advisory Committee's Note; 3 *Collier on Bankruptcy* ¶ 3002.02 at 3002-6 (15th ed. 1993). The Advisory Committee, as delegate of the Supreme Court's bankruptcy rulemaking power, had no authority to write a rule inconsistent with the Code. 28 U.S.C. § 2075.[5]

---

[5]Section 2075 provides in pertinent part:

> The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11.

5

Nevertheless, to the extent that Rule 3002(a) declares every untimely filed claim to be disallowed, the Rule impermissibly conflicts with the Code.  We agree with the courts, cited above, that so hold.

In order to read Rule 3002(a) consistently with Code §§ 501, 502 and 726, the bankruptcy rule must be viewed as providing a dividing line between timely and tardy claims, rather than a flat ban on the allowance of late-filed claims.  *Accord Vecchio,* 20 F.3d at 559 ("[A] rule of procedure that disallows claims for untimeliness cannot stand.");  *In re Pac. Trading Co.,* 33 F.3d 1064, 1067 (9th Cir.1994);  *see also Cisneros v. United States,* 994 F.2d 1462, 1465 (9th Cir.1993).[6]

In most cases, the inartful language of Rule 3002(a) makes no

---

> Such rules shall not abridge, enlarge, or modify any substantive right.
>
> The Supreme Court shall transmit to Congress not later than May 1 of the year in which a rule prescribed under this section is to become effective a copy of the proposed rule.  The rule shall take effect no earlier than December 1 of the year in which it is transmitted to Congress unless otherwise provided by law.

11 U.S.C. § 2075.

[6]The Sixth Circuit recently reached a contrary conclusion in *In re Chavis,* 47 F.3d 818 (6th Cir.1995).  The *Chavis* court held that tardily filed claims were not allowed claims under sections 501 and 502.  *Id.* 823-24.  However, as explained above, this reading renders portions of section 726 superfluous.

> The *Chavis* court also drew a distinction between chapter 7 and chapter 13 cases.  *Id.* at 824.  Although we agree that there are "fundamental differences" between the two types of cases, the provisions of chapter 5 apply equally to both.  *See* 11 U.S.C. § 103(a).  Our interpretation of the Code obviates the need to draw an extra-textual distinction.

6

practical difference. Section 726 sets forth the order for payment of claims. The general scheme requires payment of priority claims followed by unsecured claims and, if any money remains, payment of late claims, various types of penalties and interest. There will hardly ever be surplus funds available to the estate after payments to the first two tiers of creditors in a Chapter 7 case so as to enable payments upon untimely general unsecured claims pursuant to section 726(a)(3). In Chapter 11 and 13 cases, where section 726 furnishes a baseline for distribution priorities under plans,[7] the plans can incorporate parallel treatment for late-filed claims.

Particular problems have arisen however, in regard to untimely priority claims. *See United States v. Chavis (In re Chavis),* 47 F.3d 818 (6th Cir.1995); *United States v. Towers (In re Pacific Atlantic Trading Co.),* 33 F.3d 1064 (9th Cir.1994); *United States v. Vecchio (In re Vecchio),* 20 F.3d 555 (2nd Cir.1994); *Internal Revenue Service v. Century Boat Co. (In re Century Boat Co.),* 986 F.2d 154 (6th Cir.1993). More precisely, the question is what consequences, if any, attach to tardiness in filing a claim that would otherwise be entitled to priority distribution. IRS argues here that because Rule 3002(a) does not "disallow" its late-filed

---

[7]Chapters 1, 3, and 5 of the Code apply to cases under Chapters 7, 11, 12, and 13. 11 U.S.C. § 103(a). Although Chapter 7 does not explicitly apply to Chapter 13 cases, certain provisions in Chapter 13 incorporate portions of Chapter 7. Section 1325 requires that a creditor receive an amount "not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title ..." *Id.* at § 1325(a)(4). *See also* 11 U.S.C. § 1129(a)(7)(A), as explained *Collier on Bankruptcy* (15th ed.) ¶ 1129.02, at 1129-32, by quoting legislative history that cross-references this provision to §§ 726(a)(3) and 726(a)(4).

claim, there is no bar date at all for priority claims. The interpretation of the IRS rests on section 726, which provides in pertinent part as follows:

## § 726. Distribution of property of the estate

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title or tardily filed before the date on which the trustee commences distribution under this section.

(2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) of this subsection, proof of which is—

(A) timely filed under section 501(a) of this title;

(B) timely filed under section 501(b) or 501(c) of this title;  or

(C) tardily filed under section 501(a) of this title, if—

(i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title;  and

(ii) proof of such claim is filed in time to permit payment of such claim;

(3) third, in payment of any allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;  ...

The late claim filed by the IRS for back taxes owed by the Waindels is a priority unsecured claim under section 507(a)(7). Section 507 claims ordinarily receive first-tier distribution status as specified in section 726(a)(1).[8]  Section 726(a)(1), in

_____

[8]The portion of the IRS's claim relating to penalties for failing to file a tax return are given fourth level distribution

8

contrast to § 726(a)(2), draws no distinction based upon the timeliness of the filing of the priority claim. IRS infers from the omitting of express subordination of late-filed priority claims that no adverse consequences attach to its tardiness, and the entire tax claim is entitled to first-tier status. *See In re Vecchio,* 20 F.3d at 560; *Cardinal Mine Supply,* 916 F.2d at 1091.

This argument requires us to ignore that third-tier status is expressly conferred upon "*any* allowed unsecured claim proof of which is tardily filed under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection." 11 U.S.C. § 726(a)(3) (emphasis added). *In re Vecchio* described the categorization of late-filed priority claims among other tardily filed "allowed unsecured claims" as leading to an "absurd result." 20 F.2d at 558. We disagree. First, priority unsecured claims are a species of allowed unsecured claims and are facially within § 726(a)(3). Section 507, which defines claims entitled to priority, also repeatedly refers to these as "allowed unsecured claims" of various types. *See* 11 U.S.C. § 507(a)(3), (4), (5) and (6). Priority tax claims are defined as "allowed unsecured claims of governmental units...." 11 U.S.C. § 507(a)(7). There is nothing anomalous about providing timely-filed priority claims first-tier distribution status, while relegating the untimely claims to third-tier among other untimely filed "allowed unsecured" claims.

Second, contrary to *Vecchio,* it is not illogical that

status under section 726(a)(4).

late-filed priority claims may receive distribution after certain tardy general unsecured claims.  Only a tiny class of non-priority creditors receives that benefit:   those who failed to receive timely notice of the bankruptcy and who then filed in time to permit payment on their claims.  Moreover, priority claimants will almost always be on notice of the pendency of a case and thus empowered to protect their rights.[9]

Third, *Vecchio* errs in suggesting that the dichotomy between subsections 726(a)(3) and (a)(4) will permit late-filed fines and penalties to receive distributions ahead of timely filed claims for punitive relief based on (a)(4).   Consistent with bankruptcy practice, any claim can be split into its component parts—priority, secured, unsecured, penalties, etc.—and may receive distribution based on the resulting spectrum.

Finally, the decision in *Vecchio,* disallowing any effective bar date for priority claims, conflicts with § 501(c), which permits a debtor to file a proof of claim whenever a creditor does not timely file its own claim.  This provision was intended to allow debtors to complete the list of claims against the estate in a timely fashion and to ascertain the basis for and amounts of creditors' distributions.  The particular object of this salutary provision was untimely priority claims, because of their

---

[9]*Oppenheim, Appel, Dixon & Co. v. Bullock (In re Robintech),* 863 F.2d 393, 398 (5th Cir.), *cert. denied,* 493 U.S. 811, 110 S.Ct. 55, 107 L.Ed.2d 24 (1989) ("Frequent players in the bankruptcy arena ... are aware that deadlines are important and should not be heard to complain of unfairness except under the most egregious circumstances.").

potentially heavy impact on a case. *Vecchio*'s analysis overlooked § 501(c) and in so doing unwittingly emasculated it. Our result reinforces the provision.

Any court that interprets questions under the Bankruptcy Code must do so with humility—the Code's provisions are not always clear, and they are often overlaid with ancient non-statutory bankruptcy lore that is difficult to dislodge. The reasonable disagreements among the circuit and bankruptcy courts in this case exemplify the problem. We conclude, at variance with some of our brethren, that for obvious reasons going to the heart of the efficiency and fairness of the bankruptcy system, the Code attaches consequences to failure to comply with proof of claim deadlines. Further, the Code contemplates no distinction between late-filed priority and other late-filed allowed unsecured claims, both of which may recover, if at all, only under § 726(a)(3) or its Chapter 11 or 13 equivalents.

Applying the Code and Rules to the case *sub judice,* we hold that the IRS's tardily filed claim is not entitled to first tier status as IRS hoped. The claim might be entitled to a distribution under § 726(a)(3) along with any other untimely allowed secured claims, but the availability of such relief has not been argued before us and is waived. *Cinel v. Connick,* 15 F.3d 1338, 1345 (5th Cir.1994).

The IRS alternatively contended in the lower courts that the bankruptcy court abused its discretion by not allowing the amended claim to "relate back" to the date of the original filing. The

11

leading Fifth Circuit case on allowance of amendments to proofs of claim is *In re Kolstad,* 928 F.2d 171 (5th Cir.) *cert. denied* 502 U.S. 958, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991). In *Kolstad,* we explained that "[a]mendments to timely creditor proofs of claim have been liberally permitted to "cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim.' " *Id.* at 175 (quoting *In re Int'l Horizons, Inc.,* 751 F.2d 1213, 1216 (11th Cir.1985)). However, "courts that authorize amendments must ensure that corrections or adjustments do not set forth wholly new grounds of liability." *Kolstad,* 928 F.2d at 175.

The bankruptcy court and the district court both concluded that the amended proof of claim set forth new grounds of liability. The IRS candidly admitted as much at oral argument. We find no error, much less any abuse of discretion in the court's refusal to allow the amended claim to relate back to the filing of the initial proof of claim.

### III.

### CONCLUSION

The IRS's tardily filed claim is "allowed" under 11 U.S.C. § 502, but it is not entitled to first-tier status under 11 U.S.C. § 726(a)(1). Further, the lower courts did not abuse their discretion in refusing to allow the amended tardily filed claim to relate back to the filing date of the original claim. REVERSED in part, AFFIRMED in part.

12

DUHÉ, Circuit Judge, concurring in the judgment:

The majority invalidates the claims bar date of Bankruptcy Rule 3002 and with that I respectfully disagree. Although the majority suggests otherwise, its invalidation of the bar date in a Chapter 13 case creates a circuit split.[1] The majority rejects the bar date because Section 726(a) allows the payment of a claim even if proof of it is tardily filed. But § 726 does not apply to a case under Chapter 13. *See* 11 U.S.C. § 103(b) (1988). Rather, I would uphold the bar date in this Chapter 13 case and bar the IRS's tardily filed proof of claim, thereby affirming the district court. Because the majority ultimately concludes, however, that the IRS receives nothing on its claim, I concur in the judgment.

We should not invalidate a procedural rule like Bankruptcy Rule 3002 absent a strong justification. The Supreme Court has instructed us to presume the validity of procedural rules. *See Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965). Procedural rules should reflect congressional intent because Congress acquiesces in their approval. *Id.; Sibbach v.*

---

[1]Other circuits have invalidated the bar date in a Chapter 7 context. *See United States v. Towers (In re Pacific Atl. Trading Co.),* 33 F.3d 1064, 1067 (9th Cir.1994); *United States v. Vecchio (In re Vecchio),* 20 F.3d 555, 559 (2d Cir.1994); *see also IRS v. Century Boat Co. (In re Century Boat Co.),* 986 F.2d 154, 158 (6th Cir.1993) (refusing to bar untimely proof of claim by creditor who lacked notice of the Chapter 7 bankruptcy filing); *United States v. Cardinal Mine Supply,* 916 F.2d 1087, 1091-92 (6th Cir.1990) (same). The only circuit to address the validity of the bar date in a Chapter 13 context has upheld the bar date. *See United States v. Chavis (In re Chavis),* 47 F.3d 818, 823-24 (6th Cir.1995). The majority's invalidation of the bar date in a Chapter 13 case, therefore, creates a circuit split with the Sixth Circuit's decision in *Chavis.*

13

*Wilson & Co.,* 312 U.S. 1, 14-15, 61 S.Ct. 422, 426-27, 85 L.Ed. 479 (1941).  The rigorous adoption process for procedural rules creates a strong presumption that the rules properly reflect the balance between substantive and procedural law.  *See Hanna,* 380 U.S. at 471, 85 S.Ct. at 1144;  *Sibbach,* 312 U.S. at 14, 61 S.Ct. at 426-27.  Consequently, we should invalidate a Bankruptcy Rule only if it is plainly inconsistent with the Bankruptcy Code or if it transgresses the Constitution.  *See Hanna,* 380 U.S. at 471, 85 S.Ct. at 1144;  *Cisneros v. United States (In re Cisneros),* 994 F.2d 1462, 1465 (9th Cir.1993);  *cf. FDIC v. Hirsch (In re Colonial Realty Co.),* 980 F.2d 125, 132 (2d Cir.1992) (harmonizing two statutes with arguably inconsistent requirements when possible).

The majority impliedly concedes that Bankruptcy Rule 3002 is not inconsistent with 11 U.S.C. §§ 501-502 (1988) (amended 1994).  Both Sections are silent as to a bar date or the ability of a creditor to file an untimely claim.[2]  Section 501, however, contemplates a procedural requirement of timely filing by expressly referring to untimely claims.  The legislative history of § 501

---

[2]Sections 501 and 502 create the following framework:  A creditor may file a proof of claim.  *Id.* § 501(a).  Other parties with an interest in the creditor's claim may file a proof of claim if the creditor does not file it timely.  *Id.* § 501(b), (c).  If a proof of claim is filed in accordance with § 501, the claim is deemed allowed unless a party in interest objects.  *Id.* § 502(a).  Section 502(b) then lists eight substantive reasons for disallowing claims.  Therefore, § 501 gives certain parties the substantive right to file a proof of claim, and § 502 provides for an analysis of the merits of the claim filed in accordance with § 501.  *In re Tucker,* 174 B.R. 732, 739 (Bankr.N.D.Ill.1994).

further supports the existence of a timeliness requirement.[3] Section 501, therefore, incorporates Bankruptcy Rule 3002 so that timeliness is a prerequisite to allowance of a claim under § 502. *Chavis,* 47 F.3d at 823; *In re Tucker,* 174 B.R. 732, 739 (Bankr.N.D.Ill.1994); *Gullatt v. United States (In re Gullatt),* 169 B.R. 385, 387 (M.D.Tenn.1994); *In re Zimmerman,* 156 B.R. 192, 195-96 (Bankr.W.D.Mich.1993) (en banc); *see also* 8 Collier on Bankruptcy ¶ 3002.02[1], at 3002-4 (Lawrence P. King ed., 15th ed. 1995) (noting that Rule 3002 complements Sections 501 and 502).

The Second Circuit, in addition to the majority, relied on Section 726 rather than Sections 501 or 502 to invalidate Rule 3002. *See Vecchio,* 20 F.3d at 557-58. Unlike the majority or the Second Circuit, the Ninth Circuit invalidated the bar date based on its absence from §§ 501 and 502. *See Pacific Atl. Trading,* 33 F.3d at 1067. Noting that untimeliness was not listed in § 502(b) as a reason for disallowing a claim, the Ninth Circuit considered the bar date's absence telling because § 57n of the Bankruptcy Act had barred untimely proofs of claims. *Id.* at 1066-67. The Ninth Circuit's reasoning is faulty, however, because untimeliness is a *procedural* bar that Congress properly omitted from the *substantive* exceptions of § 502(b). Further, we do not accept arguments that would effect a major change in the bankruptcy laws from pre-Code

---

[3]"The Rules of Bankruptcy Procedure will set the time limits, the form, and the procedure for filing, which will determine whether claims are timely or tardily filed." H.R.Rep. No. 595, 95th Cong., 1st Sess. 351 (1977); S.Rep. No. 95-989, 95th Cong., 2d Sess. 61 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5847, 6307.

practice without some signal from Congress.  *Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992);  *see also Keene Corp. v. United States,* --- U.S. ----, ----, 113 S.Ct. 2035, 2041, 124 L.Ed.2d 118 (1993) (requiring a change in the underlying substantive law to be clearly expressed).

The panel majority relies instead on § 726 to invalidate Rule 3002.  This is a Chapter 13 case, however, not a Chapter 7 case.  Subtitle II of Chapter 7, which includes § 726, applies only to Chapter 7 cases.  11 U.S.C. § 103(b);  *see In re Stuart,* 31 B.R. 18, 20 (Bankr.D.Conn.1983) (refusing to apply § 726(a)(3) to Chapter 13).  It is quite clear that § 726 does not apply to Chapter 13.

The requirement that a Chapter 13 plan of reorganization provide creditors with at least what they would receive in Chapter 7 does not obliterate § 103(b).[4]  Section 1325(a)(4) is a Chapter 13 provision.  It instructs a bankruptcy judge to gauge the Chapter 13 plan against what a creditor would receive in Chapter 7.  Section 1325(a)(4) refers generally to Chapter 7, but makes no express reference to § 726.  It makes little sense to subvert § 103(b) by using the general reference in § 1325 to incorporate the specific language of § 726 into Chapter 13.

The majority invalidates the bar date totally rather than distinguish between Chapters 7 and 13.  But solid reasons exist for

---

[4]As of the effective date of the plan, the value of a plan's payment of an allowed unsecured claim must be "not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date."  11 U.S.C. § 1325(a)(4) (1988).

drawing this distinction. In a Chapter 13 case, the debtor maintains his assets, and a plan governs its payments to creditors. Finality is vital so that a court can determine whether the plan satisfies the Chapter 7 baseline requirement. *Chavis,* 47 F.3d at 824; *Tucker,* 174 B.R. at 743. Further, the court must be aware of all claims so that it can determine whether the debtor will able to make all the payments required by the plan. *Chavis,* 47 F.3d at 824; *Zimmerman,* 156 B.R. at 199; *see* 11 U.S.C. § 1325(a)(6) (1988).

In contrast, Chapter 7 takes the debtor's nonexempt assets and divides them among the creditors in accordance with § 726. If any assets are left over, § 726(a)(6) returns them to the debtor. It would be inequitable for a debtor to obtain assets from a liquidation over a creditor who files a tardy proof of claim. *Tucker,* 174 B.R. at 742. Consequently, § 726(a)(2)(C) and (a)(3) are two equitable exceptions to the bar date; they allow creditors who file tardy proofs of claims to step in line ahead of the debtor. *Id.; see Chavis,* 47 F.3d at 824.

Despite the valid justifications for applying the bar date in Chapter 13 but not in Chapter 7, the majority refuses to draw an "extra-textual" distinction. *Ante* at 107 n. 6. But the majority sees the distinction from the wrong side of the fence. I am not suggesting that we apply Chapter 5's provisions inconsistently; rather, the specific provisions of Chapter 7 modify the general provisions of Chapter 5 in Chapter 7 cases. *See Nobelman v. American Sav. Bank (In re Nobelman),* 968 F.2d 483, 488 (5th

17

Cir.1992) (applying specific language of Chapter 13 over general language of Chapter 5 in Chapter 13 case), *aff'd,* --- U.S. ----, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). Therefore, Rule 3002's bar date applies except when modified by the specific language of Chapter 7.

In sum, I do not agree that Section 726 invalidates the bar date in Chapter 13. "[B]ar dates establish the universe of participants in the debtor's case...." *In re Kolstad,* 928 F.2d 171, 174 (5th Cir.), *cert. denied,* 502 U.S. 958, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991). They promote a policy of administrative efficiency and practicality that would be upset if they were not enforced. *Tucker,* 174 B.R. at 743. The vast majority of courts considering whether to apply the bar date in a Chapter 13 case have applied the bar date. *See id.* at 739 nn. 14-15 (listing cases); 8 Collier on Bankruptcy ¶ 3002.05, at 3002-17. Nevertheless, the majority strikes down the presumptively valid Rule in this case by using an inapplicable statute. With that, I respectfully disagree.

Fortunately, Congress's addition of a timeliness bar to § 502(b) will soon render the majority's analysis obsolete.[5] The majority ultimately reaches the same result that I do, though, so I concur in the judgment.[6]

---

[5]*See* Bankruptcy Reform Act of 1994, Pub.L. No. 103-394, § 213(a), 108 Stat. 4106, 4125-26 (1994), *codified at* 11 U.S.C.A. § 502(b)(9) (West Supp.1995).

[6]I am not quite sure how the majority reaches its final result. The plan, not Section 726, governs distribution to creditors in Chapter 13. A plan must satisfy requirements other than § 1325(a)(4) in order to be confirmed by the bankruptcy court. *E.g.,* 11 U.S.C. § 1322(a)(2) (1988) (requiring deferred

but full payment of § 507 priority unsecured claims unless creditor agrees to different treatment); *id.* § 1325(b)(1) (requiring the debtor to pay an allowed unsecured creditor who objects to the plan at least what it can from the debtor's disposable income); *id.* § 1329(a)-(b)(1) (permitting allowed unsecured creditor to request postconfirmation modification of the plan so that it conforms with § 1322). Therefore, I do not see how the placement of the IRS's claim in § 726(a) determines the outcome of this case.